**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 26-cv-4895-WJM

IRIS SOFIA TAPIA,

Petitioner,

v.

JUAN BALTAZAR, *et al*.,

Respondents.

---

**ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS**

---

Before the Court is Petitioner Iris Sofia Tapia's Verified Petition for Writ of Habeas Corpus, brought pursuant to 28 U.S.C. § 2241 ("Petition") (ECF No. 1). Respondents Juan Baltazar, in his official capacity as Warden of the Aurora Contract Detention Facility ("DCDF"); George Valdez, in his official capacity as Acting Field Office Director of the Denver Field Office, Immigration and Customs Enforcement ("ICE"); David J. Venturella, in his official capacity as Senior Official Performing the Duties of the Director of ICE; Markwayne Mullin, in his official capacity as Secretary of Department of Homeland Security ("DHS"); and Todd Blanche, in his official capacity as Attorney General of the United States Department of Justice (collectively, "Respondents") filed a cursory response. (ECF No. 6).

For the following reasons, the Court grants the Petition.

## I. BACKGROUND

This case presents an all-too-familiar fact pattern. Tapia is a native and citizen of Venezuela. (ECF No. 1 at ¶ 33.) She first entered the United States on March 10, 2023

and was granted humanitarian parole. (ECF No. 1-5 at 3.) She lived in Wyoming before her detention. (ECF No. 1 at ¶ 33–34.) Before her arrest, Tapia had no record of criminal conduct, and there is no allegation that she was detained because of a conviction, pending criminal charge, violent act, or danger to the public. (*Id.* at ¶ 37.) Nor is there any evidence that she fled, used a false identity, attempted to evade immigration authorities, or deliberately failed to attend a required hearing. (*Id.* at ¶ 38.)

Tapia was the principal and sole financial provider for her family. (*Id.* at ¶ 36.) On August 7, 2026, ICE detained Tapia after a traffic stop in Wyoming. (*Id.* at ¶ 35.) The reason for the traffic stop was never explained to her. (*Id.*) Tapia contends that she was not served with a warrant, either at the time of her arrest during the traffic stop or later when she was detained by Respondents. (*Id.* at ¶ 39.) Nor did she receive a notice to appear until *after* she was detained and transferred to Aurora. (*Id*.)

On September 15, 2026, Tapia requested a bond hearing from the immigration court. (*Id.* at ¶ 40.) The Immigration Judge ("IJ") classified Tapia as an "arriving alien subject to mandatory detention and [held that] the Court does not have jurisdiction to redetermine Respondent's custody." (*Id*.) She has not received a bond hearing. (*Id*.)

Tapia challenges the legality of her detention. (*Id.* at ¶¶ 43–114.) Among other relief, she asks the Court to issue a writ of habeas corpus requiring her "immediate release under reasonable noncustodial conditions." (*Id.* at ¶ 10.)

## II. LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004.) More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such

cases." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws . . . of the United States")). "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.' " *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

## III. ANALYSIS

The Petition raises two grounds for habeas relief. First, Tapia claims that she was arrested without a warrant, in violation of her Fourth Amendment rights and relevant immigration laws (Count One). Second, she challenges the statutory basis for her mandatory detention under 8 U.S.C. § 1225(b)(2), arguing that her detention is instead governed by § 1226(a) (Count Two).[1] The Court first addresses Count Two before proceeding to Count One because whether Tapia is subject to § 1225 or § 1226 dictates the outcome of Count One.[2]

### A. Sections 1225(b) and 1226(a)

Tapia argues that, because was "detained in Wyoming on her way to work, [and]

[1] Count Two further contends that Respondents failed to comply with the applicable statutory and regulatory requirements for terminating her humanitarian parole under 8 U.S.C. §1182(d)(5)(A) and 8 C.F.R § 212.5(e).

[2] Because Petitioner is entitled to relief on the ground that her detention is governed by 8 U.S.C. § 1226(a), rather than the mandatory-detention provision of § 1225(b)(2), the Court need not reach the Petitioner's alternative argument in Count Two that Respondents failed to comply with the statutory and regulatory requirements for terminating her humanitarian parole pursuant to 8 U.S.C. § 1182 and 8 C.F.R. § 212.5(b).

not at the border, her detention is governed by § 1226(a)." (ECF No. 1 at ¶ 59.) Respondents responded without addressing this claim, instead declining to "submit[] a brief in opposition to the Petition detailing the facts and circumstances of this case." (ECF No. 6 at 1.) In any case, the Tenth Circuit's decision in *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026) leaves little to debate. Tapia is correct.

In *Santillan Quiroz*, the Tenth Circuit considered "whether § 1225(b)(2)(A) or §1226(a) applie[d]" to a § 2241 petitioner who entered the United States "[t]wo decades ago" and had "lived here ever since." *Id.* at 1235, 1233. Ultimately, it held "that noncitizens who entered the United States and were thereafter detained in the interior of the country are usually[3] subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)." *Id.* at 1237. The Tenth Circuit based its holding in significant part on its interpretation of the phrase "seeking admission," as it is used in § 1225(b)(2)(A). *Id.* at 1237–40. It reasoned: "A person cannot make a present request for permission to enter the United States, lawfully or otherwise, once he or she has already entered." *Id.* at 1239. Thus, "[t]he only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border." *Id.* By extension, "§ 1225(b)(2)(A) is likewise limited to the border." *Id.*

The material facts here are indistinguishable from those summarized in *Santillan Quiroz*. Like the § 2241 petitioner in that case, Tapia had already entered the United States when she was detained in August 2026 and then erroneously classified as an "arriving alien subject to mandatory detention" by the IJ. (ECF No. 1 at ¶ 40.)

---

[3] The Tenth Circuit's holding is qualified only by the fact that "[s]ome noncitizens who are arrested in the interior may be subject to § 1225(b)(1)(A)." *Id.* at 1237 n.6. But, as in *Santillan Quiroz,* "[t]here is no argument here that § 1225(b)(1)(A) applies to [Tapia]." *Id.*

Accordingly, § 1226(a)—not § 1225(b)(2)(A)—applies to Tapia.

**B. Warrantless Arrest**

Tapia also alleges that Respondents arrested her in the interior of the United States without a warrant, as required by 8 U.S.C. § 1226(a), and without establishing a lawful basis for a warrantless arrest under 8 U.S.C. § 1357(a)(2). (ECF No. 1 at ¶¶ 43–55.) Count One also contains a Fourth Amendment challenge. (*Id.*) Having established that § 1226(a) applies to Tapia's detention, the Court agrees as it relates to the violation of § 1226. The Court does not reach Tapia's contention as to the Fourth Amendment. *See United States v. Hardman*, 297 F.3d 1116, 1124 (10th Cir. 2002) ("[I]t is well-settled that federal courts should avoid deciding constitutional issues when statutory issues are dispositive.")

"§ 1226(a) authorizes arrest and detention only '[o]n a warrant issued by the Attorney General.' " *Limon Soto v. Valdez*, 2026 WL 2664193, at *2 (D. Colo. Sept. 10, 2026) (quoting 8 U.S.C. § 1226(a)). Thus, "[i]ssuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). . . . As such, it follows that absent a warrant a noncitizen may *not* be arrested and detained under section 1226(a)." *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) (emphasis in original); *see Limon Soto*, 2026 WL 2664193, at *2 (same).

Here, Respondents' detention of Tapia violates section 1226(a). Respondents failed to serve Tapia with a warrant before or at the time of her arrest. (ECF No. 1 at ¶ 39.) As explained above, Respondents do not point to the existence of any administrative warrant, nor do they even attempt to justify the warrantless arrest. In a similar case, Judge Philip A. Brimmer of this District also concluded that "given petitioner's unrefuted claim that the Notice to Appear was not issued until after

petitioner's arrest, the Court finds that the Form I-200 warrant was invalid. Therefore, petitioner was not arrested pursuant to a valid warrant, in contravention of 8 U.S.C. § 1226(a)." *Martinez-Salamanca v. Baltazar*, 2026 WL 2083209, at *3 (D. Colo. July 20, 2026). Likewise, Respondents failed to issue a Notice to Appear until "after taking [Tapia] into custody," and never produced an administrative warrant to justify the arrest. (ECF No. 1 at ¶ 39.)

Similarly, 8 C.F.R. § 236.1(b)(1) provides that "*[a]t the time of issuance of the notice to appear*, . . . the [noncitizen] may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." (emphasis added). As such, a noncitizen cannot be arrested and detained without a Notice to Appear being issued first. The events in this case occurred in the reverse order. (ECF No. 1 at ¶ 39.)

The Court therefore concludes that Tapia's detention violates 8 U.S.C. § 1226(a).

**C. Remedy**

The Government declined to substantively address Tapia's claims. (ECF No. 6 at 1.) It even acknowledges that "the Court may then decide to grant the Petition and award appropriate relief, *including release*." (*Id.* (emphasis added).) Tapia requests immediate release. (ECF No. 1 at ¶¶ 92–114.)

In the Court's view, a bond hearing will not serve as adequate relief. This Court has already written of its "concern[] that the immigration courts are not affording immigrants fair bond hearings," as "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore." *Pal v. Lyons,* 2026 WL 937962, at *4 (D. Colo. Apr. 7, 2026); *see also Quiroz Zacarias v. Mullin,* 2026 WL 1092162, at *4–*5 (D. Colo. Apr. 22, 2026) (concluding "the IJ deprived [petitioner] of his due process rights" by issuing a

bond decision that was "wholly bereft of any analysis whatsoever"). Indeed, courts across the country have, with increasing frequency, ceased "order[ing] even initial bond hearings in cases like this one involving unlawful detention under § 1225(b) because Respondents' conduct can no longer be attributed to mere negligence or ineptitude, . . . and doing so would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications." *Zheng v. Rokosky,* 826 F. Supp. 3d 545, 563 (D.N.J. 2026) (collecting cases).

Given this reality, the Court will order Tapia's immediate release.

## IV. CONCLUSION

For all these reasons, the Court ORDERS as follows:

1. The Court's Order to Show Cause (ECF No. 4) is MADE ABSOLUTE and Tapia's Petition (ECF No. 1) is GRANTED.

2. The Court GRANTS this relief to Tapia pursuant to Counts One and Two of the Petition. The Court does not reach the merits of Tapia's alternative argument under Count Two.

3. **By no later than this Thursday, October 22, 2026**, Respondents shall IMMEDIATELY RELEASE Tapia on her own recognizance, along with all her personal belongings, and may not impose any conditions of release or supervision that were not imposed in the original grant of humanitarian parole**. No additional conditions of release shall be imposed on Tapia by Respondents**. Respondents shall further facilitate Tapia's transportation from the detention facility by providing all necessary identity and travel documents to return to her primary address,

4. Respondents are ENJOINED from re-arresting or re-detaining Tapia

unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that she is a flight risk or danger to the community such that her physical custody is legally justified pursuant to 8 U.S.C § 1226(a). At any such bond hearing, Respondents shall bear the burden of proof, and Tapia shall be allowed to have counsel present. This injunction shall remain in effect until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

5. During such periods of time as Tapia remains in Respondents' custody, Respondents shall continue to be ENJOINED from removing, transferring, or causing the removal or transfer of, Tapia from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

6. Should Tapia believe she has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, she is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **November 17, 2026**. Respondents shall file a response by no later than **December 8, 2026**, and Tapia shall file a reply by no later than **December 22, 2026**; and

7. Judgment shall enter in Tapia's favor and against Respondents on **November 3, 2026,** UNLESS prior thereto the Court is informed that Respondents have failed to fully and timely comply with the terms of this Order.

Dated this 20th day of October, 2026.

BY THE COURT:

William J. Martinez
Senior United States District Judge